IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02373-NRN

KRISTEN ELAIN HARSCH,

Plaintiff,

v.

NANCY BERRYHILL, Acting Commissioner of Social Security,

Defendant.

**OPINION AND ORDER**

**N. Reid Neureiter**
**United States Magistrate Judge**

The government determined that Plaintiff Kristen Elain Harsch is not disabled for purposes of the Social Security Act. (AR[1] 32.) Ms. Harsch has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a U.S. Magistrate Judge under 28 U.S.C. § 636(c). (Dkt. #12.)

**Standard of Review**

In Social Security appeals, the Court reviews the decision of the administrative law judge ("ALJ") to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a

---

[1] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. (Dkt. ##10, and 10-1 through 10-8.)

preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271-72 (10th Cir. 2009) (internal quotation marks omitted). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## Background

At the second step of the Commissioner's five-step sequence for making determinations,[2] the ALJ found that Ms. Harsch "has the following severe impairments: obesity; arthritis; depression; panic disorder; and substance abuse disorder." (AR 23.) The ALJ then determined at step three that Ms. Harsch "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the regulations. (AR 14.) The ALJ found Ms. Harsch's posttraumatic stress disorder ("PTSD"), attention deficit hyperactivity disorder ("ADHD"), and asthma to be non-severe impairments. (*Id.*) Because she concluded that Ms. Harsch did not have an impairment or combination of impairments that meets the severity of the listed

---

[2] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988.) The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

2

impairments, the ALJ found that Ms. Harsch has the following residual functional capacity ("RFC"):

> . . . [Ms. Harsch] has the residual functional capacity to perform light work . . . with the following abilities and limitations: the claimant can occasionally climb ramps and stairs, but is unable to climb ladders, ropes, or scaffolds; the claimant can occasionally balance, stoop, kneel crouch, and crawl; the claimant must avoid hazards such as unprotected heights and dangerous moving machinery; the claimant can perform no more than simple, routine work that is low stress (which is defined as involving no more than occasional decision making and no more than occasional adapting to change); the claimant cannot have any fast paced production quotas; and the claimant can have no more than occasional contact with the public and coworkers.

(AR 24-25.) The ALJ noted that Ms. Harsch has no past relevant work. (AR 30.) The ALJ concluded that, considering Ms. Harsch's age, education, work experience, and RFC, Ms. Harsch "is capable of making a successful adjustment to other work that exists in significant number in the national economy." (AR 31.) Accordingly, Ms. Harsch was deemed not to have been under a disability from the alleged onset date of October 1, 2003. (AR 32.)

Ms. Harsch asserts two reversible errors. First, she argues that the ALJ improperly assessed the credibility and consistency of Ms. Harsch's statements with the medical evidence in violation of SSR 16-3p. Second, she claims that the ALJ improperly weighed the opinion evidence in violation of 20 C.F.R. § 404.1527(d) and 20 C.F.R. § 416.927(d). (Dkt. #16 at 2.) As these two issues are intertwined, the Court will address them together.

## Analysis

Ms. Harsch argues that the ALJ committed reversible errors in her credibility determinations and in weighing medical opinion evidence. The Court disagrees for reasons set forth below.

3

Ms. Harsch claims that the ALJ ignored relevant evidence in the record and Ms. Harsch's subjective statements regarding her physical and mental impairments. In considering the intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Oct. 25, 2017). In assessing a claimant's statements about her symptoms, the ALJ "will evaluate whether the statements are consistent with objective medical evidence and the other evidence." *Id.* "Credibility determinations are peculiarly the province of the finder of fact," and the Court will "not upset such determinations when supported by substantial evidence." *Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013) (internal quotation marks omitted). "However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.*

As Ms. Harsch notes, the framework for the proper analysis of evidence of pain is set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). The Court must consider (1) whether Ms. Harsch established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and Ms. Harsch's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, her pain

4

is in fact disabling. *Id.* at 163-64. *See also Branum v. Barnhart*, 385 F.3d 1268, 1273 (10th Cir. 2004). In determining whether Ms. Harsch's subjective complaints are credible, the ALJ should consider various factors, such as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Branum*, 385 F.3d at 1273–74 (quoting *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir.1991)).

**Physical Impairments**

Ms. Harsch argues that the ALJ did not properly assess symptoms relating to her osteopenia. She points out that she suffered four broken ankles in slightly more than two years. Therefore, Ms. Harsch claims that the ALJ's determination that she can perform light work, which requires "a good deal of walking or standing," or "sitting most of the time with some pushing and pulling of arm or leg controls," *see* 20 C.F.R. § 404.1567(b), is not supported by substantial evidence.

The Commissioner responds that the ALJ's conclusion that Ms. Harsch's allegations of debilitating ankle problems were not entirely reliable based on inconsistencies with the longitudinal record was justified, despite the ALJ's finding that Ms. Harsch's arthritis constituted a severe impairment and her acknowledgment that ankle problems were noted throughout the record. For example, records from May 2015 indicate that Ms. Harsch had a left ankle fracture and was told that she had osteopenia. (AR 791.) However, a subsequent bone density scan was normal for Ms. Harsch's age. (AR 788.) The ALJ also

5

noted that Ms. Harsch injured her left ankle in February 2016 while dancing, and commented that "dancing for exercise is an activity that is not consistent" with Ms. Harsch's alleged limitations. (AR 29.) The ALJ also stated that Ms. Harsch did not indicate having any physical limitations on her Function Report; instead, she identified major depression and anxiety as her debilitating conditions. (AR 314.) Finally, the ALJ observed that Ms. Harsch's physical health issues have been treated conservatively with exercise. (AR 27.) Thus, it is not accurate to say that the ALJ did not discuss Ms. Harsch's arthritis, and there is at least some evidence that supports the ALJ's determination that Ms. Harsch's symptoms were not so severe that she could not perform light work.

In any event, even if I conclude that the ALJ's determination that Ms. Harsch could perform light work was not supported by substantial evidence, I am persuaded by the Commissioner that this would be a harmless error because the ALJ also found that there are sedentary occupations (address clerk, type copy examiner, and tube clerk) existing nationally that Ms. Harsch could perform. (AR 31.) Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles . . .. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). Ms. Harsch testified that so long as she can adjust her chair, she could sit "all day or most of the day." (AR 82.) She also indicated on her Function Report that she can walk for four blocks at a time before needing to rest. (AR 319.) Thus, the ALJ's finding that Ms. Harsch's physical limitations did not preclude sedentary work is supported by substantial evidence.

**Mental Impairments**

Ms. Harsch argues that if the ALJ had properly assessed the consistency of Ms. Harsch's statements regarding her mental impairments with the medical evidence of record, and properly weighed the medical opinion evidence, she would have found that Ms. Harsch was disabled.

The Commissioner of Social Security employs a special technique to evaluate the severity of mental impairments and their effect on a claimant's ability to work. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). In applying the special technique, the ALJ must first decide whether the claimant has a medically determinable mental impairment. *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1). Next, the ALJ must rate the degree of the functional limitation resulting from the claimant's medically determinable mental impairments in four broad functional areas: "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3).[3] The ALJ rates the degree of limitation as either none, mild, moderate, marked, or extreme. *Id.* §§ 404.1520a(c)(4), 416.920a(c)(4).

Here, at the first step of the special technique, the ALJ determined that Ms. Harsch had medically determinable mental impairments of depression and

---

[3] Effective January 17, 2017, the regulations were updated, slightly modifying the four functional areas. *See Revised Medical Criteria for Evaluating Mental Disorders*, 81 Fed. Reg. 66,138-01 (Sept. 26, 2016). The ALJ applied the four functional areas from the earlier versions of 20 C.F.R. §§ 404.1520a(c)(3) and 416.920a(c)(3) in conducting his analysis, which are "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." The Court's analysis is the same, regardless of the wording applicable functional areas.

7

panic disorder. (AR 23.) At the second step, the ALJ determined that Ms. Harsch's mental impairments would cause her no limitations in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence, or pace. (AR 24.) He then determined that Ms. Harsch experienced no episodes of decompensation. (*Id.*) The ALJ determined that Ms. Harsch's mental impairments were not severe because they did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation. (*Id.*)

During her RFC analysis, the ALJ addressed the evidence supporting her conclusion that Ms. Harsch engages in significant activities of daily living, noting that Ms. Harsch can cook for herself, perform light chores, shop for groceries, pay bills, and, if properly motivated, perform personal hygiene. (AR 26.) While Ms. Harsch had problems focusing, the ALJ noted that she is "o.k." at tolerating changes in routine and paying attention to entertainment, and follows spoken instructions "pretty well" and written instructions "good if I can stay focused." (AR 26-27.)

The ALJ also observed that there were several indications in the record that Ms. Harsch underwent job training, looked for work, or had a job but looked for other work. (*Id.*) The ALJ concluded that "the fact that [Ms. Harsch] has worked some and applied for employment suggests that she believes she is capable of some work activity." (*Id.*)

The ALJ reviewed the medical records, which indicate that Ms. Harsch's mental health fluctuated depending on her medication and sobriety. The ALJ also

gave great weight to the report of consultative psychologist Stuart L. Kutz, who examined Ms. Harsch on February 24, 2016. (AR 938-49.) Dr. Kutz's prognosis was that Ms. Harsch suffered from chronic mental disorders, but that she appeared stable. (AR 948.) He went on,

> Relative to a competitive work setting throughout an eight hour day, her attention/concentration as well as her persistence and pace in task completion would be mildly to moderately impaired. Her social adaptation is mildly to moderately impaired. Her borderline personality features aggravate her adjustment at times.
>
> Her understanding and memory do not show any impairment.

(*Id.*) Dr. Kutz's opinion, along with Ms. Harsch's testimony and the objective evidence, informed the ALJ's restrictive RFC finding. (AR 30.)

Ms. Harsch objects to the ALJ's findings regarding her mental impairments for several reasons. First, Ms. Harsch argues that the ALJ ignored her history of suicide attempts and hospitalizations, and focused instead on the "few isolated incidents in which Ms. Harsch was in better spirits or having temporary success with her medications." (Dkt. #16 at 10.) The Court does not find this to be an accurate summary of the ALJ's findings. When reviewing the medical records, the ALJ noted instances where Ms. Harsch reported suicidal ideation; that her anxiety was not improving; that she "self-harmed" and "reported agitation, nightmares, poor concentration, insomnia, fatigue, and lack of interest"; that she was "treated at the emergency room for racing thoughts, agitation, and anger"; and that her "anxiety was exacerbated by one of her medications and that 'she was really struggling right now.'" (AR 28-29.) The ALJ also noted instances where Ms. Harsch presented as awake and alert, with a neat physical appearance, good insight, and not overtly impaired judgment or concentration.

9

(AR 1042.) Ms. Harsch's allegation that the ALJ was picking and choosing among medical records to support her position is not borne out by the evidence.

Second, Ms. Harsch argues that the ALJ improperly used Ms. Harsch's history of substance abuse to argue that her complaints are inconsistent with the medical evidence. This claim is unsupported by the record. The medical records show that there was at least some connection between Ms. Harsch's substance abuse and her mental impairments, including her suicidal ideation. (AR 573-74.) The Court also rejects Ms. Harsch's argument that because the ALJ lists substance abuse disorder as one of Ms. Harsch's severe impairments, her opinion should have addressed whether Ms. Harsch's substance abuse is material to her disability. Under 20 C.F.R. § 404.1535(b), an ALJ will consider the materiality of a claimant's substance abuse only if there is a finding of disability. Here, the ALJ found that Ms. Harsch was not disabled.

Finally, Ms. Harsch argues that the ALJ should have afforded Dr. Kutz's medical opinion little to no weight because it is "markedly inconsistent with other evidence in the record." (Dkt. #16 at 17.) This argument misses the mark.

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 401.1527(d)). The ALJ must "give consideration to all the medical opinions in the record" and "discuss the weight he assigns to them." *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (internal quotation marks omitted). "Medical opinions are statements from acceptable

10

medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). The applicable regulations governing the consideration of medical opinions distinguish among "treating" physicians, "examining" physicians, and "nonexamining" (or "consulting") physicians. *See* 20 C.F.R. § 416.927(c).

Generally, "the opinions of physicians who have treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians employed and paid by the government for the purpose of defending against a disability claim." *Sorenson v. Bowen*, 888 F.2d 706, 711 (10th Cir. 1989). *See also Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (quoting 20 C.F.R. § 416.927(d)(2)) ("The treating physician's opinion is given particular weight because of his or her 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'"). The evaluation of a treating source's opinion is a two-step process. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). "The initial determination the ALJ must make with respect to a treating physician's medical opinion is whether it is conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). "Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic

techniques and is not inconsistent with other substantial evidence in the record."

*Id.* Next,

> Even if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned.

*Id.* The ALJ must consider **all** of the following factors in evaluating opinion evidence:

1. the length of the treatment relationship and the frequency of examination;

2. the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;

3. the degree to which the physician's opinion is supported by relevant evidence;

4. consistency between the opinion and the record as a whole;

5. whether or not the physician is a specialist in the area upon which an opinion is rendered; and

6. other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quotation marks omitted). Neither the regulation nor the Court require a factor-by-factor recitation, but the ALJ's findings must be "sufficiently specific to make clear" the weight assigned to the source opinion and the reasons for that weight. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (internal quotation marks omitted).

Here, Dr. Kutz provided the only medical opinion within the meaning of the regulations. Ms. Harsch fails to identify any treating physician who provided an opinion as to any specific functional limitations, and the Court will not do so on her behalf. *See Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) "[C]laimant does not identify which treating physician she feels was ignored, and we will not speculate on her behalf."); *Gilbert v. Astrue*, 231 F. App'x. 778, 782 (10th Cir. 2007) (unpublished) (when claimant did not cite to the medical records in support of her argument regarding treating physician opinion evidence, court would not "sift through" the record to find support for her arguments). Thus, while a treating physician's opinion generally is favored over that of a consulting physician, "[t]he treating physician rule governs the weight to be accorded the medical opinion of the physician who treated the claimant . . . *relative to other medical evidence before the fact-finder*, including opinions of other physicians." *Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995) (quoting *Kemp v. Bowen*, 816 F.2d 1469, 1476 (10th Cir. 1987) (emphasis in original).

Turning to the relevant factors, Dr. Kutz only saw Ms. Harsch once, but during the examination, he performed screens for depression, anxiety, psychosis, mania, and memory; reviewed Ms. Harsch's available records; and performed a mental status exam and psychological testing. (AR 942-47.) Furthermore, neither the ALJ nor Dr. Kutz found that Ms. Harsch had no mental impairments or limitations. Instead, consistent with Ms. Harsch's medical records and the restrictive RFC, they determined that although Ms. Harsch suffered from fluctuating symptoms relating to her anxiety and depression, she could perform

work-related activities. Accordingly, the ALJ's decision to give Dr. Kutz's opinion great weight is supported by substantial evidence.

## **Conclusion**

For the reasons set forth above, the Commissioner's decision is **AFFIRMED** and Petitioner's Complaint and Petition for Review (Dkt. #1) is **DISMISSED**.

Dated this 22nd day of January, 2019.

BY THE COURT:

N. Reid Neureiter
United States Magistrate Judge